This has been a four-day sitting for us, three in New Orleans and one day in our Zoom realm. This is the final case of the sitting and certainly an important one. Case number 19-10754, Richard Deotte v. State of Nevada. Mr. Newby? Yes, Your Honor. Good morning. Good morning. May it please the Court. My name is Craig Newby and I am Deputy Solicitor General for the State of Nevada. I'd like to reserve five minutes of time for rebuttal, if possible. Preliminarily, I'd also like to thank this Court for the courtesy of allowing me to appear remotely during these unique times we have. Are you in Nevada as we speak? I am in Las Vegas, Nevada, as we speak, and unfortunately, I'm at my house right now rather than in my office. But moving along, and thank you again for this courtesy, tens of millions of women's lives have been improved through the Affordable Care Act's preventive health care provisions, which address the fundamental inequity that women were systematically charged more for preventive services than men. Multiple amici curiae have provided evidence from their unique perspectives on how this is so for Nevada specifically and for American women overall. In Nevada alone, unplanned pregnancies have significantly decreased following passage of the Affordable Care Act, resulting in significant decreases in abortion rates for underage and young women in Nevada and significant savings to Nevada of more than $30 million on Medicaid and other public insurance programs associated with unplanned pregnancies. The Supreme Court and Hobby Lobby recognize that the government has a compelling interest in preventive health care of this sort. Further, these interests have been recognized as the basis for standing by three sister circuits, the First Circuit, the Third Circuit, and the Ninth Circuit, addressing the identical preventive health care provisions. This court, in its most recent 2020 Texas v. United States decision addressing the reduction in the individual mandate tax under the Affordable Care Act to $0 in the 2020 Texas v. United States case, acknowledged and chose not to create a circuit split with these three other circuits when recognizing that Texas and other states had standing to challenge the individual mandate tax in this court. Nevada submits that its interest is supported by declarant testimony subject to penalty of perjury at this stage of the proceeding where no party has even answered the complaint at issue in this case supports standing and intervention at the time of the 2019 motion. Nevada as a sovereign state is entitled to solicitude rather than skepticism with regards to standing and with regards to intervention. Nevada as a sovereign state has a second basis for injury in this case warranting intervention and standing, and that injury results from the initial parties in this case's efforts subvert the ordinary administrative rulemaking process on this admittedly contested policy. Specifically, the prior administration was to change these preventive health care provisions in which Nevada's expressed interest has an interest. Following rulemaking which allowed all parties to participate on one side or the other, litigation ensued in two other federal district courts temporarily enjoining enforcement of such rules pending judicial review. The Supreme Court dissolved those preliminary injunctions in its 2020 Little Sisters of the Poor decision, but these cases remain ongoing and potential RFRA claims akin to those raised in this case were not decided by the Supreme Court as noted by Justice Alito's concurrence in that case. Instead of participating in these cases, plaintiffs instead chose to file this case as an end around those cases by seeking a nationwide class judgment. As described by themselves in their complaint, plaintiffs filed this case in response to the preliminary injunctions enjoining enforcement of their preferred rule. By seeking a nationwide class judgment that would be moot upon the preliminary injunctions being dissolved, plaintiffs interfered with Nevada's right to effectively participate in the administrative rulemaking process, which short of congressional action is the competent means for resolving this contested policy dispute. The federal government did no favors in this case by refusing to defend the administrative rulemaking process that was ongoing or existing law through the existing litigations and instead chose not to defend against this case. Among other things, the federal government did not answer the complaint. They did not oppose the request for a temporary restraining order. They did not substantively defend the existing law on preventive health care, as interpreted by this court in a reasoned opinion that was vacated for other reasons by the Supreme Court. And they did not appeal the entry of a nationwide class judgment with no process for administering or even identifying specific class members, whether to the district court, the class representative in this case, the federal government, or even to the employee of an employer that intends to be part of this class. It is in this context with this nationwide class judgment reaching out to Nevada that forced Nevada to seek intervention before this district court. Had Nevada been granted intervention, it would have defended the preventive health care provisions as they balance competing interests between equality of health care and the accommodation of religious objections. Based on existing United States Supreme Court precedent as reasoned by this court in East whereby this court held that the plaintiffs have no right to under-refer the challenge to independent conduct of third parties, Nevada would have defended the prior rules. Nevada has addressed this in its briefing to this court, but respectfully submits that there's been no new material facts or law change that warrant distinguishing the reasoning of this case from that already done by this court on the same issue. Further, perhaps more importantly, given the procedural circumstances of this case, Nevada would have been, had Nevada been allowed to intervene, it would have been a party to this litigation when the Supreme Court dissolved the preliminary injunctions at the heart of the Little Sisters of the Poor decision, which would have made the class relief moot through no fault of any party in this case. And it would have warranted dismissing of this case as, at least as with regards to nationwide class, moot. Here now, should this court recognize Nevada's right to intervene in May 2019, it should vacate the nationwide class judgment on munding work routes. Alternatively, based on the lack of adversity by the federal government in this case, good cause exists for this court to vacate the class aspect of this judgment, which is a remedy that greatly exceeds the injury evidence before this court. Had there been sufficient adversity, issues associated with the administrative, being able to administrate this class, further development of whether or how there was distinctions between the facts in East Texas Baptist Liberty in this case would have been developed for this court. Instead, Nevada has, and under those circumstances, Nevada would submit the lack of adversity further warrants vacating the nationwide class aspect of this judgment. Counsel, you're talking around it. Your time is moving along. It seems to me one of the central issues in this case is whether we do vacate the district court, mending where maybe the initial primary mootness case, but certainly this case law since then, such as Fancorp. Give me your best position on this case law, and particularly Fancorp, on why we should or should not, well, in your view, should vacate what the district court did, the class order and injunction. Your Honor, this case, but for the temporary preliminary injunctions that were in place in the two federal district courts in California, which affected states that were parties to that case, as I understand it, and then the district court case in Pennsylvania, which was a nationwide injunction, but for those, the Trump administration rule would be in effect, and I don't believe there's any dispute amongst these parties that the Trump administration rule, which addresses not only religious objections, but also addresses moral objections, would have made the case on its face moot. There would have been no basic, there would have been no controversy for which my colleague's clients would need to seek relief, because the rule, by its plain language of the rule, would have provided the relief that was being sought before the court. And on that basis, and that would not have been as a result of any actions undertaken by the parties to this case, it would not have been as a result of the federal government taking action, yea or nay. It would not have been a result of any action undertaken by Nevada. It would have been as a result of, it would have been as a result of the, uh, uh, uh, of, uh, uh, the different federal court. In this case, the United States Supreme court determining that the rule was in effect and determining that the injunctions should be dissolved. And on that basis, because no party would be responsible for creating the mootness, there would no longer be a case in controversy before the district court or this court regarding the scope of the relief and the appropriate steps to the extent that it is not possible to challenge the merits of the underlying ruling, um, moving forward, uh, would be to vacate the nationwide class aspect of that judgment. Uh, it's simply, it's relief that goes far beyond what be needed. And there is no longer any controversy about it. When the full sisters alluded to this case, why wouldn't an obvious answer be on the months and word of vacate decision? That's what months and word teaches us that this is what you do when, when intervening events of, uh, obviated and the case flow opportunity to litigate. Uh, your honor, I agree that the intervening events that developed the judgment should be, uh, should be, uh, set aside, uh, at minimum keeping and being respectful in Nevada's interest in this case, at minimum, the nationwide class aspect of it to which that is the aspect that directly harms Nevada. That is where Nevada's interest lies is the nationwide class aspect of it reaching out from the northern district of Texas into Nevada and throughout the country. Uh, I'm trying to be respectful and modest in terms of saying at minimum that aspect of it should be set aside. But under these circumstances, I do agree with you that the entirety of the judgment could be set aside. Let me ask you about the modifications I think that exist, uh, in bank court. One of the things Justice Scalia talked about is the equitable nature of vacating, uh, even if something is moot, that it's not as straightforward as some of the precedents might have suggested and must take into account the public interest. Uh, in light of Little Sisters of the Poor and its ruling on, on the final rule of the past administration, where does the public interest lie in this sort of independent holding by, uh, by the district court? Uh, Your Honor, uh, respectfully submit that the public interest lies in the administrative rulemaking process in terms of that. And that goes towards, uh, and that goes towards to the type of discussion that was, um, set forth in my briefing that came from, uh, Worf versus Sedlin in 1975 Supreme Court decision, where, uh, identifying where the appropriate form is to resolve this dispute. We are all aware that this has been a, that the health, the preventive healthcare provisions at issue here have been highly contested, uh, throughout the various circuits and throughout the, throughout the Supreme Court. And, and there's some dissatisfaction was expressed, I believe in Justice Alito's concurrence that there wasn't an ability to fully and finally adjudicate this issue once and for all, uh, on the type of claim that was brought here by my esteemed colleague under riffraff, but the public interest lies in allowing all parties to be able to be represented and be heard on this issue in whatever decision that's made through the administrative rulemaking process as ultimately adjudicated by our judicial system, including, but not limited to the Supreme Court. That's where the public interest lies in having that dispute and having it be resolved. It doesn't lie with allowing, allowing, or encouraging third parties to circumvent that process and to have that be part of what goes on in terms of circumventing party's interest in all sides of this. And, uh, in this, the type of end run collateral attack against what was ongoing litigation, uh, uh, it should be concerning from a variety of perspectives rather than, uh, uh, letting the administrative rule making process proceed and have the normal litigations that are associated with that and ultimately allow policy decisions to be made. All right, you got a few seconds left. You want to use it? I'm happy to save the extra 30 seconds or so for rebuttal. Thank you, Your Honor. All right, then, Mr Mitchell, you have been patiently awaiting your turn. It's come up. Thank you, Your Honors. May it please the court. Jonathan Mitchell on behalf of plaintiffs at police Richard Day at all. If that is appeal from the final judgment, the class wide injunction and the class certification order should all be dismissed for lack of appellate jurisdiction because Nevada is not injured or in any way affected by these rulings. It therefore lacks standing to appeal the judgment and the accompanying orders. And this court has no jurisdiction to reach the Munsingwear question because appellate jurisdiction is a prerequisite to ruling on a mootness question. An appellate court cannot act even on a Munsingwear issue without first establishing its own appellate jurisdiction. And this court cannot have appellate jurisdiction unless Nevada has standing to appeal. Under 28 U.S.C. Section 2106, this court can vacate district court orders only if they have been, quote, lawfully brought before, end quote, this court for review. And Mr Newby's Munsingwear argument is exactly why Nevada lacks standing to appeal and why it lacks standing to even present the Munsingwear question to this court for its consideration. If Little Sisters of the Poor eliminates any possible injury to Nevada, I'm sorry, if Little Sisters eliminates any possible injury to the plaintiffs from the contraceptive mandate, then that ruling simultaneously eliminates any possible injury to Nevada from the district court's final judgment and injunction. It's logically impossible for this court to find that Nevada has standing to appeal the holding that Little Sisters has mooted the case. We have twice moved to dismiss this portion of Nevada's appeal for lack of appellate jurisdiction, once at the outset of the appeal and once again after the Supreme Court's ruling in Little Sisters, which allowed the Trump administration's agency rule to take effect. Each of those motions was carried with the case. The court should promptly grant these pending motions and dismiss this portion of the appeal. All that is left after resolving the jurisdictionally deficient parts of Nevada's appeal, the only thing that Nevada has left is its appeal from the district court's denial of its motion to intervene. That motion should be denied as moot because the litigation between the plaintiffs and a final judgment has been entered between the parties and the defendants have abandoned their appeal. This case is over, and there is simply no pending litigation into which Nevada can intervene. At the same time, there is no pending litigation that would allow this court to vacate the district court's judgment under Munsinglar. The case is done. With the court's permission, I'd like to first address the numerous insurmountable jurisdictional obstacles. Implicit in the argument is that you say, on the one hand, you don't get to Munsinglar, but the antecedent issue is jurisdiction. In making the decision on jurisdiction, it is because of the warrant of standing, because they suffered no injury. They suffered no injury because of Little Sisters' opinion. That's one of many reasons why they suffered no injury. Judge Higginbotham, even if Little Sisters had never been decided, Nevada never would have had standing to appeal. We said that in our initial motion to dismiss, there is no injury whatsoever from the district ruling to the state of Nevada, even before the Supreme Court came along on Little Sisters. The question of whether the warrant of injury rests upon the fact that the extent of district court opinion and injunction no longer lack force, no longer have force. I wouldn't say, Your Honor, that the district court's injunction no longer has force. I would just say that it's redundant. In other words, their standing is taken away under your argument to make your jurisdictional argument, which I agree with. A jurisdictional argument is the antecedent question. Right. That seems pretty straightforward, but then how do you answer that question? The answer to the question is that you have to go to Sisters. Sorry, Sisters. There's nothing left as a practical matter. There's nothing left in Nevada's appeal as a practical matter. Right. We have no jurisdiction. We have no jurisdiction because Nevada, you have no injury. You have no injury, Nevada, because why? Because the underlying district court opinion, the mandatory class doesn't buy foreclosure or anything. That's right. I don't know. It's a two-path way, but there is a central point in the jurisdictional issue, and that's the fact that Sisters controls this or not. Even if it strikes me that way, I'm wrong about that. Little Sisters eliminates any possible basis for Nevada to appeal, but they never had any grounds to appeal even before Little Sisters came out. So again, this court has to have appellate jurisdiction to review the district court's judgment before it can even consider whether it can vacate that judgment under Munsonware. Appellate jurisdiction has to come first. Mootness comes afterward. Even though mootness is likewise a jurisdictional question, it goes to the district court's jurisdiction and not this court's jurisdiction. So the first question that has to be resolved is what injury, in fact, is Nevada suffering currently from what the district court did? And the answer to that is nothing. They have no evidence whatsoever in the record that the district court's injunction will adversely affect their offense. All the arguments are speculative. They're not based on evidence. They claim that the court has to accept their allegations as true. That is not correct. If this were a Rule 12b6 motion to dismiss, the court would have to accept allegations in a complaint. That is not the situation here. We're talking about standing to appeal a final judgment. And the Supreme Court held clearly in Whitman against Parsonova that there must be evidence in the record to support injury, in fact, causation, and redressability to establish standing to appeal. That's before we even get to Little Sisters. Once Little Sisters came out, then the district court's final judgment is redundant to what an agency rule independently requires. It's inconceivable that Nevada can now be suffering injury, in fact, from a district court injunction that does nothing more than repeat what the contents of a federal agency rule independently require. And if this court were to grant the relief Nevada is asking for, the outcome would be exactly the same because all the religious protections in the district court's final judgment are separately and independently incorporated into the agency rule that continues to exist and has been in full force since the Supreme Court issued the Little Sisters ruling. We should not be here today. There is no basis for Nevada to be appealing anything. And because there's no jurisdiction in this court to consider the final judgment or the class-wide injunction, there's no basis for this court to even rule on the Munson-Guerre issue. The argument about there never was jurisdiction, never was standing for Nevada, gets to not redressability, but to the nature of the alleged injury. There was some discussion of it by Mr. Newby earlier, certainly in the briefing. Is your point primarily that there's a lack of evidence? Primarily is the wrong word. Is your argument that there's a lack of evidence to support these alleged injuries, the effect on the population, how many people, women were affected, et cetera? Lack of evidence or lack of viability of the alleged injury at all, that that's not an injury as described by Nevada? It's a lack of evidence, really, Judge Southwick. There's also just no conceivable basis to believe the chain of causation they're speculating about here. They're suggesting, first, that the injunction will cause employers in Nevada to drop contraceptive coverage. That's rank speculation. There's no evidence in the record that any such employer even exists in Nevada. And even if they are, like Hobby Lobby, Hobby Lobby's separately protected by another injunction that it got on its own in a lawsuit completely separate from ours. So nothing this court can do to Judge O'Connor's ruling below will affect protections that Hobby Lobby and other companies have obtained in other lawsuits. More importantly, it's inconceivable that a female employee who loses contraceptive coverage because an employer takes advantage of the injunction issued by the district court would somehow go on the dole and demand that taxpayers pay for her contraception through coverage are not going to qualify for Medicaid because you need to be having an annual income below $17,000 or below $32,000 a year for a family of four. And women who have jobs with employer-sponsored health insurance are exceedingly unlikely to qualify for Medicaid or fall into that category. Then Nevada tries to speculate that women may become pregnant and have abortions. All that is based on conjecture. And the Supreme Court has made clear that injury, in fact, must be actual or imminent. Not speculative or conjectural. So to answer Your Honor's question, yes, it is a lack of evidence. But even if there were evidence to support this, it's still based on speculation, conjecture, a very attenuated chain of causation affected by multiple independent actors. This is not the stuff of which an Article III injury is made, even if there were competent evidence to support it, which there's not. So this is before the court can even get to Little Sisters, which is the double whammy in a way. Even if one were to assume, just for the sake of argument, that Nevada had competent evidence in the record, that the district court's injunction would cause an injury, there's no possible causation now between what the district court did and any resulting injury to Nevada, because we now have a separate agency rule in effect that independently requires everything that the district court injunction contains. And as far as I know, Mr. Newby should correct me if I'm wrong, there's no disagreement between the parties over this. Everything in the district court's injunction appears in the Trump administration agency rule, which has been in effect now for almost a year. There's no daylight between those two when it comes to religious objectors. Now, the Trump administration has a separate rule to protect moral objectors, which the district court injunction does not protect at all. But the fact remains that everything in the district court injunction is now independently required by an agency rule. And there's no way Nevada can be suffering injury from the injunction now that you have, in effect, a separate independent agency rule that requires every single protection for religious objectors. Let me ask you another question if I might. What practical effect does the district court's nationwide class have today? The practical effect, Judge Higginbotham, is that it provides protection for religious objectors in the event that the Trump administration's rule is ever repealed by a future administration or perhaps vacated by a future court under the arbitrary and capricious test. It locks in those protections and it shields religious objectors from the possible vagaries of future court decisions with respect to the Trump administration's rule or the actions of future administrations. So it does have effect in that regard. But again, that's not enough to confer standing on Nevada to appeal. Because what Nevada has to show is not just that it has effect, which it does, but it has to have effect that inflicts an actual injury or an imminent injury on the state of Nevada. And they can't possibly show that. The only injuries they could possibly assert before this court are based on conjecture and speculation. And if your honors look at the brief, Nevada says, well, perhaps a future court might vacate the Trump administration agency rule as arbitrary and capricious, and therefore we have standing to appeal. Well, they're right to point out that that might happen. But that doesn't confer standing. Just like in Lujan, it doesn't confer standing. Aren't you doing the same thing? Because your extent injunction is you defend on the basis of, well, that something might have happened. It may take adverse action, et cetera. Well, Judge Higginbotham, you're certainly- It's the current state of the law under Little Sisters, which controls. You're taking sort of a belted, suspended approach. I don't criticize that. But I'm just saying that conceptually, you argue for the retention of a mandatory and specialized action, but to one side, the legitimacy of those, generically, that you want that in place in the event that the present law is changed. Because if the present law is changed, then the injunction itself is not going to prevent that. Judge Higginbotham, everything you're saying is correct, but that does nothing to affect our standing to sue. Because first, standing is measured at the outset of a lawsuit. My suggestion to you assumes that they can't have standing because of the present law. Nevada doesn't have standing to appeal. But you want your cake and eat it, too. No, no, not at all. Judge Higginbotham, if the federal government had appealed, then our case would be moot under Monson Law. The federal government did not appeal. We don't need to stave off mootness at this point because the federal defendants did not make an appeal. Nevada appealed. Nevada doesn't have standing to appeal. The federal government would have had standing. They chose to abandon their appeal. Little Sisters, if it had come out while this case was on appeal from the federal government, would have mooted our case. We're not trying to have our cake and eat it, too. We don't have to stave off a mootness argument because the federal government chose not to pursue their appeal. Only Nevada appealed. They have to show standing to appeal before this court can reach the Monson Law question. So I'm not in any way suggesting that had the Monson Law issue been properly presented before this court, that we would somehow be able to beat back a mootness argument by saying we want to keep this district court injunction in place because of the speculative, hypothetical future possibility that some court might later vacate the Trump administration's agency role. If we tried to make that argument, that argument should be rejected. What we're saying to this court is that the court has no jurisdiction to reach the Monson Law question because there is not a party before this court that has standing to appeal the district court's final judgment and ruling. I hope I'm being absolutely clear on that point. The speculative future possibility that the Trump administration's role may someday be reversed, either by a future administration or by a future court, is not enough to give Nevada standing to appeal. It also would not be enough for us to defeat a mootness objection under Monson where if there were a party before this court that had standing to appeal and therefore gave the court jurisdiction to reach the Monson Law question. Well, Justice Scalia, tell us about the Monson Law doctrine and the very powerful writing of that, obviously, that these judgments don't belong to the litigants. When you think of them judging the court, they belong to the public interest. That's what you were talking about. And so private parties' actions cannot ordinarily necessarily dictate the withdrawal of those vacating, for example, a district court opinion or whatever. I agree. I agree entirely. And and again, just to be clear, I agree with the Supreme Court. So I think that's safer ground than agreeing with me. I think everything you're saying about Monson where is correct. And again, if the federal government had appealed the district court's ruling, we would not be able to stave off a Monson argument because the case would be moot on account of little sisters. The problem for Nevada is they don't have standing to appeal. And that means this court has no appellate jurisdiction to reach the Monson question. If it did, if there were a party before this court was standing to appeal, little sisters would moot this case and vacate or would be required under Monson for all the reasons your honor has said, not just during my portion of the argument, but also during Mr. Newby's portion of the argument, because an intervening decision has come in and eliminated any injury that the plaintiffs were suffering on behalf of the contraceptive mandate because the Trump administration's rule has left them off the hook. We agree with all of that. The problem is this court has no jurisdiction to reach that question. Appellate jurisdiction must be secured before this court can consider mootness under Monson if there's no appellate jurisdiction. The only possible remedy is to dismiss the appeal. Nothing more, no other issues can be reached. And the only portion of this appeal that this court has jurisdiction to consider is Nevada's appeal from the denial of its motion to intervene the appeal from the final judgment. There's no standing to appeal that the appeal from the class certification order from the injunction from the order granting a motion for summary judgment, no injury to Nevada, no standing to appeal. All they're injured by is the ruling that denied their motion to intervene. And that has to be denied as moot because there's no longer a case. They can't intervene when the litigation between the plaintiffs and the defendants has come to a complete end. So again, we would respectfully ask the court to grant our pending motions, the two of them, two separate motions to dismiss Nevada's appeal for lack of jurisdiction to the extent repealing the final judgment and the class-wide injunction. And we respectfully ask the court to affirm the denial of the motion to intervene on the grounds that the motion to intervene is now moot. I'm happy to answer any other questions the court might have. Thank you, Mr. Mitchell. Thank you, your honors. Mr. Newby. Thank you, your honor. Respectfully, the words that came to mind when hearing the argument regarding the federal government's position with regards to, if the federal government had remained the party to this appeal, this case would obviously be vacated. The words, what comes first, the chicken or the egg came to mind. Because here, the federal government displayed an utter lack of adversity at the district court level and at various points appealed and chose to withdraw its appeal even before this court. And had the federal government acted within its interests in terms of defending existing law, Nevada wouldn't be here and this appeal wouldn't be here. My colleague concedes this would be moot. Nevada sought to intervene to protect its interests because the federal government wasn't doing so. And I think there's an uncontroverted record before the district court showing how little the federal government did to defend this case. And how the federal government laid down on its duties in terms of not defending against the nationwide class aspect of this. Because these injunctions are in place against the rulemaking they prefer. Well, Mr. Newby, how does that fit in, though, to the issue of your right to appeal? It seems to me that your argument regarding standing in the district court with respect to Mr. Mitchell may have some purchase. But I do have significant questions about redressability on appeal in light of Little's history. Well, I think the equities of the federal government, the federal government's changed position with some embarrassing frequency in recent administrations. 2017, now we're seeing it again in 2021 on a variety of issues. The law does seem to be a little bit flexible from DOJ's viewpoint. But we are where we are. And the issue now is not how hard the federal government worked in the district court. The issue is what are your rights to be here? So what is the redressability answer you have in light of Little Sisters? Well, in light of Little Sisters, had Nevada been allowed to intervene in May 2019 as new, Nevada would have been a party to this case, would have been a party to this appeal on its merits. And would have been in the position that the federal government was in, as explained by my distinguished colleague on the other side. We would have been a party to this case pursuing those interests. And at that point, the nationwide, at minimum, the nationwide class aspect of the district court judgment would have been muted by events outside of any party to this case's control. What relief do you seek in your suit? The relief we sought... If you would, please tell me what exactly is the relief that Nevada seeks? Nevada sought to defeat plaintiff's efforts to obtain nationwide class relief that would apply outside of the individual plaintiffs in this case. That was the relief, that was the relief, and that was based on existing, this court's existing interpretation of the identical legal issue, which was vacated for other reasons by the Supreme Court in Zuba. And so on that basis, Nevada had, Nevada's interests in terms of having standing and for purposes of intervention are relatively uncontroverted. My colleague did not address what this court addressed in the 2020 Texas versus United States case. It specifically rejected this specific person argument that was proffered during argument today and in the briefing. This court specifically rejected creating a circuit split with the First Circuit, the Third Circuit, and the Ninth Circuit on this question. And at this early stage of the proceeding, Nevada provided declarant support identifying its harms. Arguably for intervention. So what relief are you seeking that is not covered within the Little Sisters' opinion? Nevada is seeking to vacate the nationwide class aspect of the judgment, which would be if Nevada had been allowed to intervene properly in May 2019, that would be subject to vacature, subject to Munsingware principles. What of that after Little Sisters? Class or no, what of it? What, how are you, how are you harmed by that now as you've been allowed to intervene? Would not, would that question not also have been addressed and mooted by whether we do it through Munsingware or what? Nevada is harmed by, if I may answer that last question. We have all the time we need within reason to answer. Within reason, I will keep it short. And thank you. Nevada would have been subject to, would have had the opportunity, it has been harmed in terms of its ability to participate in the normal administrative rulemaking process and the normal, the garden variety, so to speak, in terms of administrative rulemaking litigation and being a party to that for yay or nay in terms of sorting out the legality and sorting out the policy dispute. In Nevada, it has been and remains harmed by this, by this collateral attack to that existing process through an individual, by an individual party seeking a nationwide class injunction. It shouldn't be required for Nevada or any other state to have to monitor individual lawsuits with potential nationwide classes named versus participating in the ordinary administrative rulemaking process and the ordinary litigations of the day involving states in those processes. And so Nevada has been harmed and remains harmed by this intrusion into that rulemaking. Thank you, Your Honor, for your time and consideration. I thank both counsel for your participation today. This has been quite helpful. That concludes the sitting for this panel for this week. We are adjourned.